FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA 2016 FEB 24  PM 2: 23

MIDDLE DISTRICT COURT
THE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

ANTHONY LOGAN,

        Plaintiff,

CASE NO.: 6.16-CV-335-ORL-18GJK

vs.

CYPRESS LAKES HOMEOWNER'S
ASOCIATION, INC.; LELAND MANAGEMENT,
INC,

        Defendants.

_____/

## COMPLAINT

    **COMES NOW** the Plaintiff, ANTHONY LOGAN, appearing pro se, and sues the Defendants, CYPRESS LAKES HOMEOWNER'S ASSOCIATION and LELAND MANAGEMENT, INC. ("Defendants"), in support thereof, Plaintiff states as follows:

### JURISDICTIONAL ALLEGATIONS

    1.    The Court has original jurisdiction pursuant to 11 U.S.C. § 1331, 42 U.S.C. § 3613, as this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq.

    2.    The Court has supplemental jurisdiction for State claims pursuant to 28 U.S.C. § 1367.

    3.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) because (b) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and are occurring within this judicial district and a substantial part of property that is the subject of the action is situated within this judicial district.

## PARTIES

4.      Plaintiff, Anthony Logan (hereinafter "Mr. Logan"), is a resident of Cypress Lakes, a residential subdivision of Orange County, Florida and all times material, Plaintiff is physically disabled pursuant to Title 42 of the United States Code.

5.      Defendant, Cypress Lakes Homeowner's Association, Inc. (hereinafter the "Association"), is a not-for-profit homeowner's association located in Orange County, Florida comprising approximately 1,200 units and is governed by Fla. Sta. § 720.

6.      Defendant, Leland Management, (hereinafter "Leland"), is a Community Association Management Company (CAM) licensed, in the state of Florida.

## GENERAL ALLEGATIONS

7.      Plaintiff leased a unit in Cypress Lakes in May 2007, to provide extended living accommodations for himself, and his family, while attending college in Orlando.

8.      On, or about May 14, 2011, Plaintiff was using weight-training equipment in Cypress Lakes' fitness room located inside the clubhouse.

9.      During his activity, he was approached by Mary Ann Foutz, a new clubhouse employee, who accused Mr. Logan of making to much noise with the weights.   Ms. Foutz's demeanor was berating and overly authoritative for the circumstances.

10.     Mr. Logan denies that he abused the equipment and no such allegation had been made against Mr. Logan by any other clubhouse employee, or resident, in the approximately four years he resided in Cypress Lakes, prior to this incident.

11.     Ms. Foutz's allegation would constitute a clubhouse rule violation, if proven.

12.     Due to Mr. Logan's medical condition, it is a medical necessity for him to receive continuous, ongoing rehabilitation to strengthen his left knee and left quadriceps and access to the gym facilities is required to that end.

13.     Immediately after the conclusion of this encounter, the Plaintiff observed Ms. Foutz exit the fitness room and enter the pool deck where Ms. Foutz initiated a confrontation with another family, with a similar demeanor as described above, for what was later described as alleged behavior inconsistent with association rules by a minor child.

14.     This allegation would also constitute a clubhouse rule violation, if proven.

15.      In response to the May 14, 2011 encounter with Ms. Foutz, Plaintiff met with Liz Wilson, the clubhouse manager, and hand delivered to her a letter of complaint, against Ms. Foutz, dated June 21, 2011.

16.     During this meeting, Ms. Wilson informed the Plaintiff there had been numerous, prior complaints against Ms. Foutz that were brought to her attention.

17.     Upon information and belief, evidence exists that indicated Ms. Foutz earned a reputation for harassing numerous residents who were using Association amenities and had earned the nickname, "Pool Nazi" within the community.

18.     On June 19, 2011, at approximately 9:00 a.m., the Plaintiff was again using weight-training equipment in Cypress Lakes' fitness room located inside the clubhouse.

19.     Plaintiff exited the facilities at approximately 10:30 a.m. and returned later in the day at approximately 2:00 p.m. with his family, including his minor sons ages 4 and 6 years, to enjoy the Father's Day holiday at the Association swimming pool.

20.     While approaching the swimming pool entrance gate with his family, Mr. Logan was met by Ms. Foutz, and another clubhouse employee, who were standing on the opposite side of the gate.

21.     When the Plaintiff attempted to enter the swimming pool area his access, via electronic key card, was denied.

22.     At this time, Ms. Foutz informed the Plaintiff his access card was deactivated for "disrespecting" the weights.

23.     Ms. Foutz then requested the Plaintiff, and his family, to step aside and allow the waiting families behind him to enter the swimming pool.

24.     Prior to the deactivation of his access card, which allows residents access to all Association amenities, the Plaintiff was not provided notice of any alleged clubhouse rule violation, nor was the Plaintiff afforded a hearing to address any alleged clubhouse rule violation.

25.     Pursuant to Florida state statute §720.305(2)(a), a fine or suspension may not be imposed without at least 14 days' notice to the person sought to be fined or suspended and an opportunity for a hearing before a committee of at least three members appointed by the board who are not officers, directors, or employees of the association, or the spouse, parent, child, brother, or sister of an officer, director, or employee.  If the committee, by majority vote, does not approve a proposed fine or suspension, *it may not be imposed*. If the association imposes a fine or suspension, the association must provide written notice of such fine or suspension by mail or hand delivery to the parcel owner and, if applicable, to any tenant, licensee, or invitee of the parcel owner.

26.     At all times relevant to this Cause, no such committee existed, or had ever existed.

27.     On June 21, 2011 the Plaintiff submitted a second written complaint related to Ms. Foutz's behavior and, her act of deactivating the Plaintiff's access card effectively denying the Plaintiff access to the Association amenities.

28.     This second written complaint was addressed to Vanessa Martinez a Licensed Community Association Manager (LCAM), for Leland and was sent via certified mail and, the Defendant has verified its receipt.

29.     This written complaint also included:

    a.          A denial of any abuse of Association property by the Plaintiff.

    b.          Notice to Leland and Cypress Lakes that it is a violation of Florida statutes to suspend a resident's access to amenities, such as the case here, without affording the resident at least 14 days notice and a hearing of the alleged rule violation before such suspension may be imposed.

    c.          Notice that the Plaintiff has a long-standing disability, which requires regular rehabilitation, and that denying access to the work out room directly impacts the Plaintiff's health due to the inability to rehab.

30.     The above reference letter was essentially ignored and the unlawful suspension continued throughout the summer and was reactivated, without notice to the Plaintiff, around September 22, 2011.

31.     No duration for the suspension was given and Plaintiff was not aware clubhouse access was restored until approximately mid October 2011.

32.     Plaintiff has endured 17 knee surgeries and as a result of this unlawful suspension of access to common areas by the Defendants, the Plaintiff's fitness and rehabilitation routine was interrupted and the Plaintiff was forced to incur the additional burdens and expenses associated with finding other means to continue rehabilitation. As a result, Plaintiff's health has suffered irreparable harm.

33.     As a result of this unlawful suspension of access to common areas by the Defendants, the Plaintiff's family, primarily his two minor children, was unable to use and enjoy Association amenities, including the swimming pool and the Plaintiff was forced to incur the additional burdens and expenses associated with finding other recreational activities for the Plaintiff's minor children.

34.     Subsequent to the Plaintiff's suspension, an investigation conducted by numerous residents, uncovered that, upon information and belief, at least eight (8) different residents have had their access to common areas unlawfully suspended on at least eleven (11) occasions by the Defendants for alleged clubhouse rules violations. Again, such suspensions are unlawful due to the Defendants failure to provide notice and a hearing prior to imposing such suspensions, which is expressly prohibited under Florida state statues, and Association governing documents

35.     In a letter dated June 27, 2011, Ms. Martinez acknowledged the Defendants received the Plaintiff's written complaint, dated June 21, 2011, but as of the filing of this lawsuit, upon information and belief, all complaints and concerns have effectively been ignored by Defendants.

36.    Pursuant to § 804(f)(2)(B) of Title VIII of the Civil Rights Act (1968), as amended by the Fair Housing Act of 1988, it is a violation of federal law to discriminate against a resident based on disability.

37.    Pursuant to § 804(f)(3)(B) of Title VIII of the Civil Rights Act (1968), as amended by the Fair Housing Act of 1988, it is a violation of federal law to deny a resident necessary reasonable accommodations.

38.    Defendants were put on notice of the Plaintiff's disability upon receipt of a certified letter dated June 21, 2011 that was received by the Defendants.   The Defendants made no attempt to verify this assertion with the Plaintiff and the denial of Plaintiff's access to common areas was continually suspended.

39.    Defendants were further put on notice of the Plaintiff's disability upon receipt of a letter from the Plaintiff's orthopedic surgeons, dated September 6, 2011, whose receipt has been acknowledged by the Defendants, whereby the surgeon states Mr. Logan has had complex knee surgeries which require, as a matter of "medical necessity", continuous, ongoing rehabilitation. The Defendants made no attempt to verify this assertion with the Plaintiff and the denial of Plaintiff's access to common areas was continually suspended.

40.    Defendants conducted no objective, individualized inquiry whatsoever into whether Mr. Logan suffered a verifiable disability.

41.    Following the discriminatory acts by the Defendants, on February 2, 2012, Mr. Logan filed a complaint with the Fair Housing Continuum.  Despite the fact that the complaint was the subject of an approximately two and a half year investigation, the mater was no-caused and is currently under appeal with the HUD office in Washington

D.C. The subject of the disability appeal is due to the failure of the newly assigned HUD investigator to obtain the Plaintiff's disability verification, in the Plaintiff's possession, prior to issuing a finding of no-cause.

42.   As one of the largest CAM's in the state of Florida, Leland has training and knowledge of the requirements of the Fair Housing Act, and the requirements to make housing accommodations available to persons with disabilities and not to discriminate against persons with disabilities.

43.   The Defendants acted in reckless disregard of the federally protected rights of Mr. Logan and are liable for punitive damages.

44.   A handicapped plaintiff proceeding under the Fair Housing Amendments Act can rely on a "disparate treatment," "disparate impact" or "reasonable accommodation theory". Douglas v. Kriegsfeld Corp., 884 A.2d 1109, 1128-29 (D.C. 2005); Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218-19 (11th Cir. 2008); Here, Plaintiff relies on a disparate treatment theory to support his claims against Defendants in this matter.

45.   Plaintiff has incurred significant financial and personal burdens as a result of the Defendant's actions including attorney's fees and over 1,000 hours addressing this matter, including lost family time.

46.   The Plaintiff has decided to bring an action in Federal Court to preserve his rights while the HUD appeal process continues and to prevent the claims from being time barred.

47.   Subsequent to Plaintiff's written complaint dated June 21, 2011, Plaintiff has been subjected to numerous false allegations directed at the Plaintiff's character

with apparent motive of retaliation.  These allegations include false claims that Mr. Logan is "violent", "intimidating", "confrontational", "a threat", and even one false accusation apparently made by a then sitting Board member who, upon information and belief, apparently stated that Mr. Logan was "looking" for a particular member of Cypress Lakes' security detail for the stated purpose to "kick his ass".  Plaintiff has exhibited none of these attributes and, in fact, had no knowledge of the identity of, or the existence of, the Board member who apparently made the statement that Plaintiff was actively seeking a physical confrontation with a member of Cypress Lakes' security.

48.    The Plaintiff has evidence that the false, defamatory statements made against him are intentional.  Plaintiff possesses recorded audio that refutes, in totality, derogatory, and defamatory comments made against the Plaintiff. The Defendant's witness made the false allegations to a Federal H.U.D. investigator involved in this complaint.

49.    On June 21, 2011, Vanessa Martinez of Leland, at the behest of Cypress Lakes, sent a letter to Plaintiff's lessor stating that violations continue to be observed by the Plaintiff; the Plaintiff's lack of cooperation; the Plaintiff's alleged abuse of gym equipment; and the Plaintiff's violent behavior towards clubhouse employees, were the reason Plaintiff's access card was suspended.  No description of the alleged violent behavior was provided.  Plaintiff refutes any such allegation.

50.    On June 30, 2011, Vanessa Martinez of Leland, at the behest of Cypress Lakes, sent an email to Plaintiff's lessor stating that the Board of Directors for Cypress Lakes had discussed the matter and would re-activate the Plaintiff's access card if

Plaintiff wrote an apology note to the clubhouse staff advising Plaintiff knew the rules and would follow them.

51.     As an Licensed Community Association Manager, Ms. Martinez knows her above referenced email violates Florida Sta. §§ 720.305(2)(a)&(b) because the Board of Directors does not have the statutory authority to suspend or reactivate resident's access cards.  That authority rests with a statutorily mandated committee of at least three (3) disinterested people appointed by the Board of Directors and since the Board failed to appoint such a committee, said committee did not exist.  The suspension was an illegal act by the Defendants for their failure to follow Florida state statues.

52.     Defamation acts on behalf the Defendants are repeated, negligent, intentional and malicious against Mr. Logan and Defendants are liable for punitive damages.

## COUNT I – FAILURE TO REASONABLY ACCOMODATE IN VIOLATION OF § 804(f)(3)(B) (42 U.S.C. 3604)

53.     Plaintiff hereby incorporates by reference the allegations contained in Paragraphs Nos. 1-52 as though those allegations were fully set forth within this count.

54.     Defendants are personally involved, and/or had authorized and /or ratified each and every discriminatory act and denial of accommodation for Plaintiff herein.

55.     At all times material, Vanessa Martinez and all other Leland employees had actual knowledge that Plaintiff has a physical disability and regarded him as a person with a disability.

56.     At all times material, Ms. Foutz and all other Cypress Lakes employees had actual knowledge that Plaintiff has a physical disability and regarded him as a person with a disability.

57.    Pursuant to § 804(f)(3)(B) (42 U.S.C. 3604), it is unlawful to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

58.    An individual seeking reasonable accommodations for a disability need not explicitly mention the words "fair housing act" or "reasonable accommodation".

59.    Plaintiff's June 21, 2011 letter to Leland requesting accommodations based on his disability manifested an intention to obtain accommodations for his disability and could be reasonably be construed as a request for accommodations

60.     Mr. Logan's statements to Defendant manifested an intention to obtain accommodations for his disability and could reasonably be construed as a request for accommodations.

61.    Mr. Logan's physician's statement, received by Defendants,  served as both verification of Plaintiff's disability and, affirmation of Plaintiff's request for accommodations.

62.    Despite this, Defendants failed to consider Mr. Logan's request or whether any reasonable accommodation could have been made.

63.    Such accommodation, to meet the needs of a resident with a physical disability, would not be an undue financial or administrative burden on Defendants.

64.    At no time did Defendants or any of their employees, attempt to discuss Mr. Logan's disability or needs with him.

65.     Upon information and belief, at no time did Defendants or any of their employees, seek to retain any opinion from a medical professional as to Plaintiff's disability and needs.

66.     Such accommodation, to understand the disability and needs of a resident with a physical disability, was necessary to the equal use and enjoyment of common and public areas.

67.     Defendant's failure to address such request and then serve notice to Plaintiff's lessor, alleging false accounts of "violent behavior" constitutes a denial of the reasonable accommodation request.

68.     Defendant's failure to serve notice and afford Plaintiff a hearing of alleged clubhouse rules violations, as required by Florida Sta. § 720.305, prevented an opportunity for direct communication between Defendants and the Plaintiff, and constitutes a denial of the reasonable accommodation request.

69.     Defendant's failure to comply with its existing policies and practices, in accordance with Florida law, to accommodate the disability of Plaintiff is discriminatory and unlawful.

70.     Such actions by Defendants were in total and reckless disregard of Plaintiffs rights and indifferent to Mr. Logan's disability and needs.

71.     Further, as a direct and proximate result of Defendant's discrimination, Plaintiff has suffered irreparable loss and injury including, but not limited to actual damages, humiliation, emotional distress, and deprivation of the right to equal housing opportunities regardless of disability.

WHEREFORE, Plaintiff, Anthony Logan, demands judgment against Defendants Cypress Lakes and Leland Management, to declare that the actions of Defendants violated the Fair Housing Amendments Act, by discriminating against persons with disabilities and award Plaintiff compensatory and punitive damages, and attorneys' fees and costs as well as injunctive relief as follows:

1.      That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating against persons with disabilities;

2.      That the Court enjoin Defendants from discriminating against Plaintiff or any other person, because of their disability or need for a reasonable accommodation;

3.      That the Court order Defendants to provide a notice to all residents of Cypress Lakes of their rights under the Fair Housing Act, including their right to have accommodations because of a disability;

4.      That the Court order that Defendants instruct all of its employees, agents, independent contractors and/or other persons who deal with the management of Cypress Lakes, of the terms of the Court's Order and the Fair Housing Act, Fair Housing Amendments Act and implementing regulations;

5.      That the Court order that Defendants to maintain for inspection by Plaintiff, and all other residents, at its offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations;

6.      And grant any other such relief as this Court deems just and equitable.

## COUNT II – CLAIM FOR VIOLATION OF FLORIDA STA. § 720.305 DUE PROCESS REQUIREMENTS

72.      Plaintiff hereby incorporates by reference the allegations contained in Paragraphs Nos. 1-52 as though those allegations were fully set forth within this count.

73.    In addition or in the alternative to the other counts in this Complaint, the Plaintiff sues the Defendant for damages for violation of F.S. §§ 720.305(2)(a) & (b).

74.    By Defendant's own admission, Mary Ann Foutz, deactivated Plaintiff's access to common areas for an alleged clubhouse violation of "disrespecting" the weights, on Father's Day, June 19, 2011.

75.    Pursuant to § 720.305(2)(a), an Association may suspend for a reasonable period of time, a tenants right to use common areas for the failure to comply with reasonable rules.

76.    Here, the suspension began on June 19, 2011, and presumably ended on September 22, 2011, a period of a period of three (3) months and two (2) days.

77.    Because § 720.305(2) does not allow the imposition of monetary fines for alleged clubhouse rules violations, which is an option in lieu of access suspension, to exceed ten (10) days in duration, it is reasonable to foresee the ninety-two day suspension as extreme and unreasonable.   In addition, the duration was inherently unreasonable because it was served without notice or a hearing.

78.    Pursuant to § 720.305(2)(b), a fine or suspension *may not be imposed* without at least 14 day's notice to the person sought to be fined or suspended and an opportunity for a hearing before a committee of at least three members, appointed by the Board who are *not* officers, *directors*, or *employees* of the association.   If the committee, by majority vote, does not approve a proposed fine or suspension, it *may not be imposed*.

79.    On June 21, 2011, Plaintiff sent, and Defendants received, a certified letter to Vanessa Martinez and Leland Management informing Defendants that the

suspension imposed by Ms. Foutz, an employee, was in violation of Florida statutes because said suspension denied Plaintiff his due process rights to notice and a hearing before a suspension is imposed.  Importantly, Ms. Foutz, an employee, under Florida law, was not legally epowered to impose resident suspensions.

80.    As one of the largest CAM's in the state of Florida, Leland has training and knowledge of § 720.305 and the due process requirements that must be followed before a suspension for alleged association rules may be imposed.

81.    Despite receiving Plaintiff's certified letter informing Defendant of their failure to comply with state statues, Defendants chose not to respond to Plaintiffs allegation but instead, chose to ignore Defendant's correspondence.

82.    Further, Leland contact the Plaintiff's lessor, via a letter dated June 21, 2011, and, in their capacity as the Association CAM, expressed their intent to enforce the unlawful suspension imposed by the "board". Importantly, the Board, under Florida law, was not legally empowered to impose resident suspensions.

83.    At all times material to this Cause, the committee, that under Florida law, possesses the authority to impose such fines and/or suspensions upon residents, following appropriate notice and hearing, did not exist, nor had it ever existed.

84.    Plaintiff's attempts to cause Defendants to comply with the law was repeatedly met with false accusations against Plaintiff's character by accusing Mr. Logan of exhibiting "violent", "intimidating" and "threatening" behavior towards various members of Cypress Lakes staff.  Defendants are fully aware these accusations are false and unsustainable.

85.    Because of Defendant's willful and deliberate refusal to comply with the state's notice and hearing requirements before imposing suspension of Plaintiff's common areas access, the Plaintiff is entitled to damages, punitive damages, costs, expenses, and attorney's fees incurred in connection with this matter.

WHEREFORE, Plaintiff, Anthony Logan, respectfully requests that this Court enter an order for damages, punitive damages, grant costs of this action, attorneys' fees pursuant to Chapter 720, *Florida Statutes*, and grant such other and further relief, including any supplemental relief, as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

**RESPECTFULLY** submitted this ___ day of February 2016.

Anthony W. Logan
37 North Orange Avenue, Suite 500
Orlando, Florida 32801